**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**George Michael RUELAS, Defendant—
Appellant.**

**United States of America,
Plaintiff—Appellant,**

v.

**George Michael Ruelas, Defendant—
Appellee.**

**Nos. 02–50600, 02–50660.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 4, 2004.

Decided May 5, 2004.

Ronald L. Cheng, Esq., Beverly Reid O'Connell, Esq., Lizabeth A. Rhodes, Esq., USLA—Office of the U.S. Attorney, Los Angeles, CA, for Plaintiff–Appellee.

Joel Levine, Esq., Encino, CA, for Defendant–Appellant.

Before: KLEINFELD, WARDLAW, and BERZON, Circuit Judges.

* This disposition is inappropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

## MEMORANDUM *

George Michael Ruelas appeals his convictions for conspiracy to possess with the intent to distribute cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and possession with the intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). Ruelas is a former California Highway Patrolman who conspired with other law enforcement officers to use legitimate police intelligence to steal narcotics and cash. The conspiracy included a July 4, 1997 theft of 295 kilograms of cocaine from the California Bureau of Narcotics Enforcement's ("BNE") evidence vault. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

### 1. Alibi Rebuttal Evidence

The district court did not abuse its discretion in permitting the government to present evidence rebutting Ruelas's alibi, despite the tardiness of its notice. Federal Rule of Criminal Procedure 12.1 imposes a continuing reciprocal duty on the government and a defendant to disclose the particulars of an alibi defense and its rebuttal. See Fed.R.Crim.P. 12.1. Under the Rule, once a defendant provides adequate notice of an intended alibi, the government must timely disclose "each government rebuttal witness to the defendant's alibi defense." Fed.R.Crim.P. 12.1(b)(1). The administration of Rule 12.1 is left to the discretion of the district court, United States v. Portillo, 633 F.2d 1313, 1324 (9th Cir.1980), and, "[f]or good cause," it "may grant an exception to any requirement of Rule 12.1(a)—(c)." Fed. R.Crim.P. 12.1(d).

At issue here is a printout from the Chevron Corporation indicating that, on the date of the BNE robbery, Ruelas's

credit card was used to make two purchases at a Tucson, Arizona gas station: the first at 10:58 a.m. and the second at 9:30 p.m. The government disclosed this evidence to the defense, which tends to rebut Ruelas's alibi, only after Ruelas testified that the two Chevron-card purchases he made that date occurred at approximately 10:30 p.m. Defense counsel moved to exclude the printout under Rule 12.1 as untimely alibi rebuttal evidence. The district court denied this motion on April 24, 2002, finding that due to:

> the manner in which this case has unfolded, it seems to me in the interest of justice appropriate for me to waive any technical requirement and permit the government to be able to put on its witnesses.

Because the record supports the district court's decision to invoke this exception "in the interest of justice" by "waiv[ing] any technical" noncompliance with Rule 12.1 on the government's part, we find no abuse of discretion. Moreover, even if we assumed that the district court did abuse its discretion, any error would be harmless in light of the overwhelming evidence of Ruelas's guilt. *See United States v. Williams*, 455 F.2d 361, 364 (9th Cir.1972).

### 2. Compulsory Process Clause

The district court did not err in denying Ruelas's motion for a mistrial based on an alleged violation of the Sixth Amendment's Compulsory Process Clause. "While the Compulsory Process Clause guarantees a criminal defendant the right to present relevant and material witnesses in his defense ... [here] the trial court never barred [Ruelas] from exercising this right." *Alcala v. Woodford*, 334 F.3d 862, 879 (9th Cir.2003) (internal citation omitted). On the contrary, the district court issued Ruelas a subpoena with the express purpose of compelling evidentiary support for his alibi. Because the record provides

no support for the notion that "the Government acted in bad faith," *Arizona v. Johnson*, 351 F.3d 988, 1000 (9th Cir. 2003), when it independently discovered the Chevron printout, Ruelas has failed to establish a violation of his right to compulsory process. That Chevron failed to produce the subpoenaed material for the defense, but produced it for the prosecution, is troubling, but it is not a denial of the defendant's right to obtain the subpoena and have it enforced.

### 3. Federal Rules of Evidence 106: The Rule of Completeness

 The district court's decision to exclude portions of the audiotaped conversation between Ruelas and a government informant was not an abuse of discretion. Federal Rules of Evidence 106 provides that:

> [w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Fed.R.Evid. 106. After carefully reviewing the redacted portions of the transcript, we are satisfied that the district court did not err in finding that none of the excised statements "ought in fairness" to have been presented to the jury. *Id.*

### 4. "Multiple Conspiracies" Instruction

 Nor did the district court err in determining that the evidence did not warrant a multiple conspiracy instruction. "To distinguish a single from a multiple conspiracy, we examine 'the nature of the scheme; the identity of the participants; the quality, frequency, and duration of each conspirator's transactions; and the commonality of time and goals.'" *United States v. Hopper*, 177 F.3d 824, 829 (9th

Cir.1999) (quoting *United States v. Bibbero*, 749 F.2d 581, 587 (9th Cir.1984)). Here, the evidence indicates that Ruelas participated in a single conspiracy.

Ruelas and his co-conspirators began stealing narcotics and/or currency using law enforcement intelligence in 1992 and persisted until 1993. In addition to employing their hallmark "knock and talk" method (where co-conspirators dressed as uniformed law enforcement officers knock on the door of a suspected drug house and, after informing the occupant that the residence is suspected to support drug activity, enter the premises and steal any drugs they discover), Ruelas and his co-conspirators robbed a truck that was under the surveillance of a team of BNE agents, one of whom was a co-conspirator. This theft was only possible because Ruelas's co-conspirator was the sole BNE agent who had a clear view of the truck and he was, therefore, able to inform the other co-conspirators exactly when it would be safe to remove the drugs without being detected. Similarly, in 1997, Ruelas conspired to, and did, steal drugs from the BNE evidence locker using inside information and access provided by a member of the conspiracy posing as a legitimate law enforcement officer.

The 1992–1993 crimes and the 1997 robbery are exceedingly similar with regard to the nature of the scheme, the identity of the participants, and the commonality of goals. *See Bibbero*, 749 F.2d at 587. All of the crimes involved similar levers: the abuse of police authority and the use of insider information provided by a co-conspirator. All of the crimes sought the same bounty: drugs and currency. All of the crimes involved the same core group of participants who shared in the proceeds of the thefts, though not all co-conspirators participated in each crime. In short, all of the crimes involved a single conspiracy.

Even if we interpret the evidence to support the existence of two different conspiracies, Ruelas's challenge would fail under *United States v. Anguiano*, 873 F.2d 1314, 1317 (9th Cir.1989). "[A] multiple conspiracies instruction is generally designed for trials involving multiple defendants engaged in multiple conspiracies, not for trials of lone defendants who are worried that the jury may not agree upon the same set of facts." *Id.* at 1318. The judge instructed the jury that, in order to find Ruelas guilty of conspiracy, they must find that there was "a single agreement beginning in 1992 and ending in 1998," so the jury must have so concluded. Also, *Anguiano* holds that the danger of "spillover" of guilt from one defendant to another, because the spilled-upon defendant was not part of one of the conspiracies, does not exist "when, as in this case, the defendant stands trial alone." *Id.*

### 5. *Obstruction of Justice*

■ Under U.S.S.G. § 3C1.1, the district court may enhance a defendant's sentence by two levels if "the defendant willfully obstructed or impeded ... the administration of justice during the course of the ... prosecution...." U.S.S.G. § 3C1.1. One example of conduct to which this enhancement applies is "committing, suborning, or attempting to suborn perjury." *Id.* "The elements of an obstruction penalty for perjurious testimony require the court to find that the defendant gave false testimony on a material matter with willful intent." *United States v. Hinostroza*, 297 F.3d 924, 929 (9th Cir.2002).

The district court, after viewing all the evidence and observing Ruelas's testimony, determined that he had not willfully perjured himself. "We give great weight to the district court's assessment of [Ruelas]'s testimony." *United States v. Oliver*, 60 F.3d 547, 555 (9th Cir.1995). Although

the district court plausibly could have deemed Ruelas's testimony perjurious, it did not clearly err in declining to do so. *See United States v. Shannon*, 137 F.3d 1112, 1119 n. 3 (9th Cir.1998) ("Mere dispute or disagreement as to a defendant's perception of facts, without more, should not give rise to a charge of perjury [at] sentencing.").

**AFFIRMED.**

BERZON, Circuit Judge, concurring.

I concur in the memorandum disposition, except that, with regard to the conspiracy instruction issue, I concur only for the reason that, even if there were two conspiracies, the evidence establishes that Ruelas participated in both. A multiple conspiracy instruction would not have resulted in his acquittal for either period, so any error was harmless.